IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KARL T. MUTH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| ENTERPRISE RENT-A-CAR, INC. | ) | |
| a Missouri corporation, | ) | **08CV1025** |
| | ) | |
| AMERICAN RECOVERY SYSTEMS, | ) | |
| INC. d/b/a ARS, | ) | |
| an Illinois Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

FILED
FEB 19 2008
JUDGE AMY ST. EVE
United States District Court

JUDGE AMY ST. EVE

MAGISTRATE JUDGE COLE

### PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

NOW COMES Plaintiff Karl T. Muth, *pro se*, for its Motion for Permanent Injunction, states as follows:

### BACKGROUND

Karl T. Muth was a customer of Enterprise Rent-A-Car in March of 2007. See Affidavit of Karl T. Muth, ¶ 3, attached hereto as Exhibit 1. Muth rented a car and returned it in the same or similar condition. Id., ¶ 4, 5. The Enterprise attendant acknowledged the vehicle's acceptable condition. Id., ¶ 6.

Enterprise called Muth to complain of damage to the car. Id., ¶ 7. When Muth demanded evidence of damage, Enterprise did not respond with any evidence until four months later. Id., ¶ 10. Upon closer examination, the photographs did not seem to show what they purported to show. Id., ¶ 11.

Muth denied any alleged damage to the Pontiac was his responsibility. Id., ¶ 13.

Nearly half a year passed before Muth was contacted by ARS, an agency hired by Enterprise to collect the alleged debt owed by Muth to Enterprise. Id., ¶ 15. ARS did not contact Muth in writing within five days

1

of ARS's first collection call to Muth, as is required by law. Id., ¶ 17. ARS did not inform Muth of his legal right to contest the debt during the first thirty days of the collection process. Id., ¶ 18. ARS threatened to alter Muth's credit history in order to compel Muth to pay the alleged debt. Id., ¶ 19.

Muth contacted Enterprise in a letter dated January 23, 2008 in an attempt to settle the matter without resorting to litigation. Id., ¶ 21. Enterprise failed to respond. Id., ¶ 22. Muth again contacted Enterprise after Enterprise failed to respond to Muth for roughly a month. Id. To date, Enterprise has not responded to Muth. ARS continues to threaten to alter Muth's credit history, despite the debt's still being in dispute. Id., ¶ 19.

## ARGUMENT

A. **Applicable Law.**

The Illinois Code of Civil Procedure provides:

> No temporary restraining order shall be granted without notice to the adverse party unless it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon.

735 ILCS 5/11-101 (West 2007). "A temporary restraining order issued without notice and a preliminary injunction issued without notice are the same type of relief, and, whether referred to under either term, require the same elements of proof." In re Estate of Wilson, 373 Ill.App.3d 1066, 1075, 869 N.E.2d 824, 833 (Ill. App. Ct. 2007). The party seeking a preliminary injunction or TRO must establish the following: (1) it has a protected right; (2) it will suffer irreparable harm if injunctive relief is not granted; (3) its remedy at law is inadequate; and (4) there is a likelihood of success on the merits. County of DuPage v. Gavrilos, 359 Ill.App.3d 629, 634, 834 N.D.2d 643, 649 (Ill. App. Ct. 2005).

The Court may grant a TRO based on the specific facts shown in the affidavit, the verified complaint, or both. Id. at 635. "[T]he party seeking relief is not required to make out its entire case that would entitle it to relief on the merits; rather, it need show only that it raises a 'fair question'[.]" Id. Though notice of an application for a TRO must be given to the adverse party, even informal, telephonic notice shall suffice. See

American Warehousing Services, Inc. v. Weitzman, 169 Ill.App.3d 708, 533 N.E.2d 366 (Ill. App. Ct. 1988) (notice by telephone thirty minutes before motion for temporary restraining order was granted deemed sufficient notice).

**B.     Muth is entitled to a TRO or Preliminary Injunction to prevent Enterprise or ARS from irrevocably harming his credit report before the result of Muth's action for a Declaratory Judgment has been adjudicated.**

    **1.     Muth has a protected right at stake.**

Muth has a right to contest the alleged debt at issue before his credit is irrevocably harmed. 15 U.S.C. 1692(g)(b). A creditor or credit reporting agency cannot strategically prevent a consumer from contesting debts or debt collections by withholding notice required and guaranteed by statute. 15 U.S.C. § 1692(g)(a)(3), (g)(a)(4), and (g)(a)(5).

    **2.     Muth will suffer irreparable harm if injunctive relief is not granted.**

"[I]rreparable harm occurs only where monetary damages cannot adequately compensate the injury or where the injury cannot be measured by pecuniary standards." Fischer v. Brombolich, 207 Ill.App.3d 1053, 1065, 566 N.E.2d 785, 793 (Ill. App. Ct. 1991). If the Court denies Muth's request for injunctive relief, Muth will clearly suffer irreparable harm as he cannot repair or erase the harm a nonpayment item would inflict upon his credit report. If Enterprise and ARS are allowed to alter Muth's credit report prior to Muth's action for Declaratory Judgment having been heard, Enterprise and ARS will, in essence, be able to strategically circumvent Muth's due process rights. The harm Muth will suffer if his credit rating is injured by erroneous entries on his credit report, in terms of ability to borrow, choice of lending products, available rates for borrowing, and so on, particularly in the current market, is incalculable. Hence, monetary damages will not suffice.

    **3.     Muth has no adequate remedy at law.**

In order for there to be an adequate remedy at law, "the remedy must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as an equitable remedy." Fischer v.

Brombolich, 207 Ill.App.3d 1053, 1065, 566 N.E.2d 785, 793 (Ill. App. Ct. 1991). Under the circumstances, absent injunctive relief, Muth has no adequate remedy at law.

Muth is vulnerable to harm and has no adequate remedy at law until his Declaratory Judgment action is adjudicated; Exhibit 1 hereto, ¶ 19. Moreover, the ability for Enterprise and ARS to harm Muth's credit in the interim, without respect to the instant litigation, cannot be prevented otherwise. Thus, apart from injunctive relief, Muth has no adequate remedy at law.

4.  **Muth is likely to succeed on the merits.**

    I.  **Muth is likely to succeed on the merits of his claim that Enterprise, or ARS, or both, violated the Fair Credit Reporting Act.**

It is well-settled law that companies that merely report their experiences with customers are not credit reporting agencies for FCRA purposes. See p, R. WHAT CONSTITUTES [A] "CONSUMER REPORTING AGENCY" WITHIN [THE] MEANING OF 15 U.S.C.A. § 1681(A)(F), 101 A.L.R. Fed. 751 (1991). However, by being a collection agency that aggregates substantial amounts of information concerning consumer credit and holding itself out as a source of this information, ARS brought itself within the ambit of the Fair Credit Reporting Act. Failure to disclose the contents of Muth's file at ARS, or the details of ARS's collections efforts, or whether ARS planned to harm Muth's credit or was simply posturing or threatening, violated § 603(f) of the Fair Credit Reporting Act. ARS displayed a consistent and willful disregard of the Fair Credit Reporting Act or, alternatively, acted so negligently as to ensure its noncompliance with the Fair Credit Reporting Act. This noncompliance rose to the level of breaching the statutorily-guaranteed "clear and accurate" standard for agencies whose conduct is governed by the Fair Credit Reporting Act. See Gillespie v. Equifax Information Svcs., L.L.C., 484 F.3d 938 (7th Cir. 2007). Even a negligent ambiguity in the way facts are put forth to the consumer can create a question of fact as to liability under the Fair Credit Reporting Act. See, e.g., Id. at 942. Under the circumstances, Muth is likely to succeed on his Fair Credit Reporting Act claim.

**II.     Alternatively, Muth is likely to succeed on the merits of his claim Enterprise, or ARS, or both, violated the Fair Debt Collection Practices Act.**

The Fair Debt Collection Practices Act applies to "debt collectors" whose conduct involves the collection of a debt. McCready v. Ebay, Inc., 453 F.3d 882 (7th Cir. 2006). In the instant matter, Muth and Enterprise were still engaged in a discussion as to the underlying liability. Hence, the debt ARS attempted to collect was disputed, premature, and not yet payable. ARS's conduct was sufficient to mislead the "objectively reasonable, but unsophisticated recipient" of its communications as to the nature of the debt. See, cf., Turner v. J.V.D.B. Associates, Inc., 202 Fed. Appx. 123 (7th Cir. 2006) (question turns on whether communication by collection agency to consumer may cause confusion). Further, the violation notice provided for in 15 U.S.C. § 1692(g) was never furnished by ARS, a *per se* violation of 15 U.S.C. § 1692(g), as more than five days have elapsed since ARS's first contact with Muth. Hence, the 30-day window never began to run under § 1692(g) and still has not begun to run, making ARS's activities inappropriate, premature, and illegal. Muth is likely to succeed in showing not only that ARS's omissions created a violation of the statute, but that ARS's communications with Muth -- including threats to damage his credit -- "unacceptably increases the level of confusion" for the hypothetical, unsophisticated debtor. See Sims v. GC Svcs., L.P., 445 F.3d 959, 963 (7th Cir. 2006). This is particularly true where at least once ARS, on the telephone, stated a different amount from Enterprise's summer 2007 letter attempting to collect the same alleged debt, a violation of 15 U.S.C. § 1692(f)(1) or, at minimum, cause for a reasonable consumer to be confused. Making "false and misleading representations" and "harassing" and "abusing" a consumer in the course of debt collection in violation of law is sufficient to state a claim. See, e.g., Matthews v. Homecoming Financial Network, 2005 WL 2387688 (N.D.Ill. 2005). It is illegal for a debt collector to "threaten[ ] to take any nonjudicial action to effect dispossession ... of property if ... there is no present right to possession of the property." See Purkett v. Key Bank USA, Inc., No. 01 C 162, 2001 WL 503050 at *2 (N.D.Ill. 2001) Under the circumstances, Muth is likely to succeed on his Fair Debt Collection Practices Act claim.

**III.    Alternatively, Muth is likely to succeed on the merits of his claim that**

5

**Enterprise, or ARS, or both, violated the Illinois Consumer Fraud and Deceptive Practices Act.**

To state a violation of the Illinois Consumer Fraud and Deceptive Practices Act, a plaintiff must allege three elements: (1) an unfair or deceptive act or practice by the defendant; (2) the defendant's intent that plaintiff rely on the deception; and (3) the occurrence of the deception in the course of conduct involving trade or commerce. Parks v. Wells Fargo Home Mortgage, Inc., 398 F.3d 937, 943 (7th Cir. 2005), citing Siegel v. Levy Org. Dev. Co., Inc., 607 N.E.2d 194, 198 (Ill. 1992); Avery v. State Farm Mut. Auto. Ins. Co., 835 N.E.2d 801, 850 (Ill. 2005) ("To prove a private cause of action under section 10a(a) of the Act, a plaintiff must establish: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception."). In the instant case, Enterprise, or ARS, or both, engaged in deceptive acts or practices with the intent that Muth rely upon the deception or omission. The deception or omission -- in this case, the omission of Muth's right to contest and the failure to contact Muth in writing, as required by law -- was in the course of trade or commerce, in order to affect the validity and collection of an alleged debt. There has been or may be irreversible actual damage to the plaintiff's credit score, which cannot be mended once inflicted, directly related to the deception in question.

Any accusation of fraud in this Circuit is subject to a heightened pleading standard. FED. R. CIV. P. 9(b); DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990). This heightened standard requires the plaintiff to plead the "who, what when, where, and how." Id.; see also Graue Mill Dev. Corp. v. Colonial Bank & Trust Co., 927 F.2d 988, 992 (7th Cir. 1991). In the case at bar, the aforementioned chain of events satisfies this heightened Rule 9 requirement, particularly when taken in concert with the attached affidavit. See Complaint; Exhibit 1 hereto ¶¶ 15-20.

Under the circumstances, Muth is likely to succeed on his Illinois Consumer Fraud and Deceptive Practices Act claim.

## CONCLUSION

WHEREFORE, KARL T. MUTH respectfully requests that the Court grant his Motion for Temporary Restraining Order and Preliminary Injunction and enter an order granting the following relief:

- (a) Enjoining Enterprise from making any changes or entries to Karl T. Muth's credit histories with any credit bureau;

- (b) Enjoining ARS from making any changes or entries to Karl T. Muth's credit histories with any credit bureau;

- (c) Enjoining Enterprise and ARS from publicizing, disseminating, broadcasting, publishing, or otherwise affirmatively acting to make the alleged debt in controversy more publicly known;

- (d) Any other such relief the Court deems just and proper.

Respectfully Submitted,

Karl T. Muth

Karl T. Muth
61 West 15th Street #208
Chicago, Illinois 60605 / (312) 952-6000    By: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KARL T. MUTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: |
| ) | |
| ENTERPRISE RENT-A-CAR, INC. ) | |
|    a Missouri corporation, ) | |
| ) | |
| AMERICAN RECOVERY SYSTEMS, ) | |
|    INC. d/b/a ARS, ) | |
|    an Illinois Corporation, ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT OF KARL T. MUTH

I, KARL T. MUTH, being first duly sworn upon oath, depose and state as follows:

1. I am more than eighteen years old.

2. I have personal knowledge of the matters set forth herein and if called to testify, I would testify as set forth in this Affidavit.

3. I was a customer of Enterprise Rent-A-Car in March of 2007 and contracted for the rental of a white Pontiac (see Exhibit A hereto).

4. On or about March 3, 2007, I rented a car from Enterprise Rent-A-Car and signed the form Enterprise Rent-A-Car contract.

5. On or about March 5, 2007, I returned the same car, in the same or substantially the same condition, to Enterprise Rent-A-Car.

6. Upon returning the car, the attendant at the Enterprise Rent-A-Car facility acknowledged the vehicle's acceptable condition. I left for La Guardia Airport to catch my flight back to Chicago.

Affidavit of Mr. Karl T. Muth attached as Exhibit 1 (Three Pages in Total)

7. Weeks later, I received a call from Enterprise Rent-A-Car claiming the car had been damaged while in my care.

8. I demanded to know the nature and location of the alleged damage and demanded photographs of the alleged damage, and the reason for the delay in notifying me. Enterprise could not provide a reason for the delay or the number of people who had driven the car between my surrender of it to Enterprise and the time when the alleged damage was noted.

9. Months passed before I received a letter on or about June 22, 2007 from one Kiana Watson of Enterprise.

10. I also received, around the same date, an electronic mail message with four photographs of a white Pontiac attached (see Exhibits C, D, E, F hereto).

11. Upon opening the photo files, I noted the time and date the digital camera had recorded for the photographs did not match the content of the photographs. Specifically, it showed times of day well after sunset for each photograph, while the photographs appeared to have been taken in broad daylight (see Exhibit G hereto).

12. I concluded that someone had set a digital camera to the incorrect date, paying no mind to the time of day, and taken a photo of the vehicle.

13. I called Enterprise promptly and denied liability for any damage to the Pontiac.

14. I called Enterprise again and proposed that they send photos that were not altered or taken with false embedded data. Enterprise failed to respond.

15. In December of 2007, American Recovery Systems, Inc. ("ARS"), a collection agency hired by Enterprise, began calling me. I informed ARS that I did not believe I was liable for the damage and would not pay any amount to Enterprise.

16. ARS continued to call (see Exhibits $H_1$, $H_2$, $H_3$, $H_4$ hereto) me asking for money and threatening to make entries on my credit report if I did not pay. I continued to refuse to pay.

Affidavit of Mr. Karl T. Muth attached as Exhibit 1 (Three Pages in Total)

17.  ARS never contacted me in writing.

18.  ARS never informed me of my right to dispute the debt and their collections efforts.

19.  ARS continued to threaten to alter my credit history arbitrarily and erroneously through January, 2008 and to the present day.

20.  The only information as to contesting my liability for the debt ARS provided was to talk to Enterprise.

21.  I contacted Enterprise in a letter dated January 23, 2008 (see Exhibit J hereto). I sent a settlement agreement with the letter, dated January 22, 2008 (see Exhibit K hereto).

22.  After receiving no response, via either telephone, electronic mail, fax, or post, I sent another letter (see Exhibits L, M hereto), along with copies of the January 23, 2008 letter and January 22, 2008 settlement agreement to Enterprise. To date, I have received no response, inquiry, negotiation, or counteroffer as to my offers to settle this matter amicably.

FURTHER AFFIANT SAYETH NAUGHT.

_____
KARL T. MUTH

Subscribed and sworn to before me this 18th day of February 2008.

_____
Notary Public



"OFFICIAL SEAL"
JODIE NEEDHAM
COMMISSION EXPIRES 11/03/10

Affidavit of Mr. Karl T. Muth attached as Exhibit 1 (Three Pages in Total)